UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


LODGE                                           CIVIL ACTION

VERSUS                                          NO: 11-1257

DOE, ET AL.                                     SECTION: "J" (3)

## ORDER AND REASONS

Before the Court are Defendant Bishop Kevin J. Boyd, Sr. ("Bishop Boyd")'s **Motion in Limine to Exclude and Strike Myra Hidalgo, LCSW (Rec. Doc. 97)**, Plaintiff's opposition to same **(Rec. Doc. 108)**, and Defendant's reply thereto **(Rec. Doc. 110)**. Defendant's motion, set for hearing on August 15, 2012, is before the Court on the briefs without oral argument. The Court, having considered the motion and memoranda of counsel, the record, and the applicable law finds that the Defendant's motion should be **DENIED** for the reasons set forth more fully below.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This case arises from claims for damages due to alleged sexual abuse inflicted upon Plaintiff Darryl Lodge by Defendant Bishop Boyd. Plaintiff filed the instant lawsuit on May 26, 2011,

1

naming as Defendants Reverend John Doe and ABC Church.[1] On June 14, 2011, Plaintiff amended his complaint to include Bishop Boyd and the Apostolic Church at New Orleans (hereinafter, "Apostolic Church" or "the Church"). Plaintiff's complaint asserts that Bishop Boyd was the leader of the Apostolic Church, and through his position at the Church, Bishop Boyd sexually abused Plaintiff from approximately age twelve until age eighteen. Plaintiff's complaint asserts that members of the Church's board of directors and governing bodies knew or should have known of the inappropriate behavior. The pre-trial conference for this matter is set for September 5, 2012. The jury trial is set for October 1, 2012. On July 27, 2012, Defendant filed the instant motion seeking to exclude Plaintiff's expert witness, Myra Hidalgo ("Ms. Hidalgo").

**THE PARTIES' ARGUMENTS**

Defendant argues that the Court should strike Myra Hidalgo on the grounds that she is unqualified to testify as an expert under Federal Rule of Evidence 702. Defendant asserts that after meeting with Plaintiff for a total of five hours and forty-minutes, Ms. Hidalgo, a licensed clinical social worker,

---

[1] ABC Church is a fictitiously named religious institution of which Plaintiff and his mother were members. See Complaint, Rec. Doc. 2, pp. 2-3.

diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"). Defendant contends that pursuant to Louisiana Revised Statute § 37:2703(15)(b), a social worker is prohibited from interpreting psychological tests, engaging in the practice of psychology, and engaging in the practice of medicine. Defendant argues that Ms. Hidalgo's testing and diagnosis of Plaintiff with PTSD was clearly the practice of psychology and, therefore, beyond the scope of what a clinical social worker is permitted to do under Louisiana law. As such, Defendant argues that Ms. Hidalgo is not qualified to testify in the instant case. In addition, Defendant contends that Ms. Hidalgo should be struck because her opinion is unreliable. Defendant further argues that Ms. Hidalgo is biased due to her own experience as a victim of child sexual abuse. Defendant also avers that Ms. Hidalgo's report and assessment of Plaintiff are unreliable, because they were unduly influenced by discussions and briefings that Ms. Hidalgo had with Plaintiff's counsel prior to meeting with Plaintiff.

    In response, Plaintiff argues that Ms. Hidalgo is qualified to serve as a witness in this case. Plaintiff asserts that under Louisiana Revised Statute § 37:2708(B) clinical social workers in Louisiana are authorized to apply their specialized knowledge and skill "in the areas of prevention, assessment, diagnosis, and

treatment of mental, emotional, and behavioral and addiction disorders." (Rec. Doc. 108, p. 2) Plaintiff argues that such authorization allows Ms. Hidalgo to make the "clinical diagnosis" of PTSD in this case as well as to evaluate Plaintiff for signs and symptoms of sexual abuse. Specifically, Plaintiff asserts that per the Diagnostic and Statistical Manual, childhood sexual abuse is not considered a psychiatric disorder because it is based on environmental factors. Therefore, Ms. Hidalgo's diagnosis was not a psychiatric or medical diagnosis but, rather, an authorized clinical diagnosis. Thus, Plaintiff contends, Ms. Hidalgo is qualified to make such a diagnosis and to testify as an expert in this case. As to Defendant's arguments about bias, Plaintiff contends that neither Ms. Hidalgo's prior experiences nor her discussions with Plaintiff's counsel unduly influenced her report and diagnosis. Furthermore, Plaintiff argues that such arguments do not go to admissibility, but instead are "questions relating to the basis and sources of [Ms. Hidalgo's] opinion," thereby making them suitable for cross-examination, not exclusion prior to trial. (Rec. Doc. 108, p. 7)

**DISCUSSION**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's

4

"specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) the expert's testimony "is based on sufficient facts or data;" (3) the expert's testimony "is the product of reliable principles and methods;" and, (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. FED. R. EVID. 702. The United States Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Both scientific and nonscientific expert testimony are subject to the Daubert framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). When expert testimony is challenged under Daubert, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. Moore v. Ashland Chem. Co., Inc., 151 F.3d 269, 276 (5th Cir. 1998).

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the

testimony is scientifically valid." Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. Burleson, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004); see also Runnels v. Tex. Children's Hosp. Select Plan, 167 F. App'x. 377, 381 (5th Cir. 2006) ("A trial judge has considerable leeway in determining how to test an expert's reliability.") (internal citations and quotations omitted).

    With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." Bocanegra v. Vicmar

Servs., Inc., 320 F.3d 581, 584 (5th Cir. 2003). Ultimately, the Court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. Scordill v. Louisville Ladder Group, L.L.C., No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). As the Daubert Court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. As a general rule, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss., 80 F.3d 1074, 1077 (5th Cir.1996) (citing Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir.1987)).

As previously noted, Defendant seeks to prevent Plaintiff's expert, Ms. Hidalgo, from testifying based upon Louisiana Revised Statute § 37:2703(15)(b), which states that social workers are not allowed to engage in the practice of psychology or medicine.[2]

---

[2] LA. REV. STAT. § 37:2703(15)(b). In support of his argument Defendant also relies on Naquin v. Elevating Boats, LLC., No. 10-4320, 2012 WL 1664257 (E.D. La. May 11, 2012), in which this Court held that a licensed clinical social worker was not qualified to testify as to a PTSD diagnosis. Id. at *8. The Court

Defendant asserts that Ms. Hidalgo's diagnosis and evaluation of the Plaintiff are beyond the scope of her authorization under Louisiana law and, therefore, she is not qualified to testify. In response, Plaintiff argues that under Louisiana law, the practice of clinical social work actually "requires the application of specialized clinical knowledge and advanced clinical skills in the areas of prevention, assessment, diagnosis, and treatment of mental, emotional and behavioral and addiction disorders." LA. REV. STAT. § 37:2708(B). Plaintiff contends that Ms. Hidalgo's diagnosis and evaluation fall within the application of her "specialized clinical knowledge and advanced clinical skills" as a clinical social worker and, therefore, qualify her to testify as an expert.

As an initial matter, the Court notes that the question of who is qualified to testify as an expert witness in federal court is not governed by state licensure laws, but rather by federal law, namely, the Federal Rules of Evidence. FED. R. EVID. 101. Furthermore, nothing in the Federal Rules or the Advisory

---

finds that the facts and circumstances surrounding the Naquin case are distinguishable from the facts at issue in the instant case and, therefore, declines to extend the Naquin holding to the instant action. Furthermore, the Court notes that in Naquin, the issue of the competing statutes governing the practice of clinical social work was never placed before the Court.

Committee notes thereto suggests that state licensure, or operation within the rules governing state licensure, is a requirement for expert qualification. In fact, the post-<u>Daubert</u> Advisory Committee notes state that "[n]othing in this amendment is intended to suggest that experience alone-or experience in conjunction with other knowledge, skill, training or education-may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." FED. R. EVID. 702, 2000 Amends. Adv. Comm. Notes.

In addition, Louisiana law does not suggest that it regulates who may testify in a federal forum. Rather, the licensing statutes in question regulate the actual practice of social work, not expert testimony. <u>See</u> LA. REV. STAT. § 37:2701. As such, this Court determines that it need not reach the question of whether Ms. Hidalgo's diagnosis and evaluation of the Plaintiff in this case fall within the statutes governing state licensure of social workers. Rather, the Court finds that under Rule 702 and <u>Daubert</u>, Ms. Hidalgo possesses "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue," and, therefore, is qualified to testify as an expert in this case with respect to

9

child sexual abuse. See FED. R. EVID. 702; see also 25 Am. Jur. 3d Proof of Facts § 189 (1994) ("With appropriate experience and credentials, [clinical social workers] can be qualified to give mental health opinions."). In particular, the Court notes that Ms. Hidalgo has published a book on sexual abuse, given numerous professional presentations on sexual abuse, and in her current practice primarily diagnoses and treats victims of sexual abuse. Furthermore, Ms. Hidalgo's bibliography demonstrates that she has done extensive research on sexual abuse, most notably, in the area of abuse by clergy members. Therefore, Ms. Hidalgo will be allowed to testify as an expert in this case.

As to Defendant's additional arguments about the unreliability of Ms. Hidalgo's testimony, the Court finds Plaintiff's argument on this point persuasive. The issues of bias that the Defendant raises go to the "basis and sources" of Ms. Hidalgo's opinion. Therefore, they are not issues of admissibility appropriate for the Court to assess, rather, they are precisely the type of issues that the jury should determine after cross examination. See 14.38 Acres of Land, 80 F.3d at 1077(citing Viterbo, 826 F.2d at 422).

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion is hereby **DENIED**.

New Orleans, Louisiana this 24th day of August, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT